# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

## No. 01-30361
_____

ALISHA WYATT,

                    Plaintiff-Appellant,

versus

HUNT PLYWOOD COMPANY, INC.; ET AL,

                    Defendants,

HUNT PLYWOOD COMPANY, INC. and FEDERAL INSURANCE COMPANY

                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

July 5, 2002

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Alisha Wyatt appeals the district court's grant of summary judgment in favor of Defendants-Appellees Hunt Plywood Co. and Federal Ins. Co. (collectively "Hunt") on her Title VII sex discrimination claim, her state law tort claims, and her motion for a jury trial. Concluding that (1) as to one aspect of Wyatt's sexual harassment claim based on the behavior of a Hunt

supervisor, factual questions exist regarding Hunt's affirmative defense under the Ellerth/Faragher test,[1] and (2) Wyatt did not waive her right to a federal jury trial, we reverse, in part, the grant of summary judgment in favor of Hunt and remand with instructions.

## I. FACTUAL BACKGROUND AND PROCEEDINGS

Plaintiff-Appellant Wyatt was an employee of Hunt from March 1994 until she quit her job in May 1995. Her immediate supervisor was John Thompson and her next higher supervisor was Donald Gorum, both of whom allegedly harassed Wyatt sexually.[2] When Wyatt was hired, she received a copy of Hunt's employee relations manual which contained Hunt's sexual harassment policy. In relevant part, that policy directs: "Employees who feel that they have been harassed are urged to contact their supervisor, a member of the Personnel Department, Mr. Gary Crawford, or me [Alex T. Hunt, Executive Vice President]."[3] Wyatt admits that she had knowledge of the policy and was aware that she could report harassment to any one or more of the individuals listed.

---

[1] See Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1999); Burlington Indus. v. Ellerth, 524 U.S. 742 (1999).

[2] Thompson was a "lead man" whose duties apparently included the smooth operation of a certain portion of the work floor. The district court, in its Ruling and Judgment, referred to Thompson as Wyatt's "co-employee," but as discussed in greater detail below, Hunt has already admitted the fact of Thompson's status as Wyatt's immediate supervisor.

[3] Documents Filed with Hunt's Motion for Summary Judgment, Defendant's Ex. 3.

2

Wyatt alleges that, almost immediately after she began working at Hunt, Thompson commenced harassing her sexually, referring to her in vulgar terms and continually asking her to have sex with him. Wyatt asserts that she promptly complained of Thompson's conduct to Gorum, her and Thompson's next higher supervisor; but that despite her complaints and Gorum's informal discussions with Thompson, the harassment persisted. The discrete facts of Thompson's harassment and Wyatt's reporting them to Gorum are not in dispute.

Wyatt further alleges, and Hunt concedes, that instead of remedying the problem, Gorum himself eventually subjected Wyatt to sexual advances and harassment, beginning in late June or early July 1994. Wyatt concedes, however, that she never reported Gorum's conduct to anyone higher up the management chain during her time at Hunt.

Thompson's harassment of Wyatt reached its zenith on November 12, 1994, when he sneaked up behind her and pulled down her sweat pants while she was actively working on the line, and in the plain view of other employees. Wyatt immediately complained to Gorum, who promptly discussed the incident with Wyatt and agreed to write an incident report. Nevertheless, in an effort to down-play Thompson's actions, Gorum declined to indicate in the report that Thompson had pulled Wyatt's pants down.

Wyatt did not report to work on the day following the pants incident, but did on the day after that, when she met with Buddy

3

Rachal, the superintendent to whom Gorum reported. After hearing Wyatt's version of the story, Rachal promptly reported the matter to Larry Manthei, Hunt's Plant Manager. Manthei commenced an investigation, suspended Thompson and Gorum, and informed Wyatt that any further harassing actions were to be reported to Rachal. Just three days after the pants incident, Hunt completed its investigation, fired Thompson for inappropriate conduct, and fired Gorum for misrepresenting facts to management and mishandling the situation as a supervisor.

Wyatt alleges that, following these firings, she was ostracized and criticized by her co-workers. She advised supervisors of this development and, over the next few months, Hunt management personnel met with Wyatt's co-workers, individually and in groups, informing them that Wyatt was not to be criticized or otherwise treated unfairly for reporting Gorum and Thompson.

Wyatt's employment with Hunt continued until she quit in May 1995. She then filed suit against Hunt in state court, asserting state law tort claims for assault, battery, and intentional infliction of emotional distress.

In her state court petition, Wyatt requested a jury trial, but failed to post the required bond before the specified deadline. This led Hunt to file a motion to strike Wyatt's jury demand. Wyatt did not directly respond; instead, she filed a motion to amend her original petition to add a Title VII claim and to name Federal Insurance Company (Hunt's liability insurance carrier) as

4

an additional defendant. In considering both parties' motions, the state court expressly informed Wyatt that she had forfeited her right to a jury trial by not posting the required bond, expressly admonishing her that she could not use her amended petition, which did not allege any new facts, to breathe life into her erstwhile jury trial demand.

After Wyatt added the federal claim, Hunt removed the case to federal district court. Some nine weeks after removal, Wyatt filed a motion for a jury trial. Without addressing the timeliness of her federal jury demand, the court denied the motion on grounds that she had waived her right to a jury trial by her acts in the state court proceedings. Wyatt then filed (1) a mandamus petition requesting that we order the district court to grant her a jury trial, (2) a notice of appeal from the district court's denial of jury trial, and (3) a second motion for jury trial in district court. We first denied her mandamus petition and then dismissed her appeal for want of prosecution. The district court denied her second motion for a jury trial.

Hunt filed a motion for summary judgment in district court seeking dismissal of Wyatt's claims. Wyatt opposed Hunt's motion and filed her own motion for partial summary judgment as to liability. The district court granted Hunt's summary judgment and dismissed Wyatt's action with prejudice, after which Wyatt timely filed a notice of appeal.

5

## II. ANALYSIS

### A. <u>Standard of Review</u>

We review the district court's rulings on summary judgment motions <u>de</u> <u>novo</u>, employing the same analysis as the district court.[4]  A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact.[5]  An issue is material if its resolution could affect the outcome of the action.[6]  In deciding whether a fact issue has been created, we must view the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party.[7]

The standard for summary judgment mirrors that for judgment as a matter of law.[8]  Thus, we must review all of the evidence in the record but make no credibility determinations or weigh any evidence.[9]  In reviewing the evidence, we must disregard everything favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving

---

[4]  Fed. R. Civ. P. 56.

[5]  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

[6]<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

[7]<u>See</u> <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 525 (5th Cir. 1999).

[8]<u>Celotex Corp.</u>, 477 U.S. at 323.

[9]<u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150 (2000).

party that is uncontradicted and unimpeached.[10]

## B.  <u>Supervisor Sexual Harassment After</u> <u>Ellerth</u> <u>and</u> <u>Faragher</u>

For the sake of clarity, we reiterate our established methodology for analyzing supervisor sexual harassment cases under Title VII.[11]  First we determine whether the complaining employee suffered a "tangible employment action."[12]  If he has, the claim is classified as a "quid pro quo" case; if he has not, the claim is classified as a "hostile environment" case.[13]  In a quid pro quo suit, proof that a tangible employment action resulted from a supervisor's sexual harassment renders the employer vicariously liable, and no affirmative defense can be asserted.  In a hostile environment case, however, the next inquiry is whether the supervisor's actions constituted severe or pervasive sexual harassment: If the conduct was not severe or pervasive, the employer cannot be held liable vicariously for the supervisor's actions; if the conduct was severe and pervasive, the employer is vicariously liable unless the employer can establish both prongs of the conjunctive <u>Ellerth/Faragher</u> affirmative defense — the only affirmative defense to vicarious liability now available in a

---

[10]  <u>Id.</u> at 151.

[11]  <u>See</u> <u>Casiano v. AT & T Corp.</u>, 213 F.3d 278 and attached appendix (5th Cir. 2000) (attached appendix providing a "roadmap" for analysis of supervisor sexual harassment claims).

[12]  <u>Id.</u>

[13]  <u>Id.</u> at 283.

supervisor sexual harassment hostile work environment case.[14]  To establish this defense, the employer must show that (1) the employer exercised reasonable care to prevent and correct promptly any sexual harassment, <u>and</u> (2) the complaining employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer.

## C.  <u>Application of the Ellerth/Faragher Test</u>

Wyatt seeks to recover from Hunt, not for any direct sex discrimination by Hunt, but for its vicarious liability for the sexual harassment visited on her by supervisors.  The supervisor sexual harassment allegedly experienced by Wyatt in this case is properly classified as a hostile work environment claim.[15]  To state a <u>prima facie</u> hostile work environment claim, Wyatt must prove that the she was subjected to severe and pervasive harassment by a supervisor based on her sex.[16]  The district court assumed, and Hunt

---

[14]  <u>Id.</u> at 284.

[15]  As stated, the <u>Ellerth</u>/<u>Faragher</u> affirmative defense, discussed below, cannot be advanced when the employer has taken a tangible employment action.  These cases classify such an action as "quid pro quo" harassment.  Although Wyatt argues that she was "constructively discharged" from Hunt, the district court noted — and we agree — that Wyatt's allegations in this regard are nothing more than "vague protestations."  Despite her recitation of case law, she does not advance a coherent claim of constructive discharge or other tangible employment actions by Hunt.  Therefore, under <u>Ellerth/Faragher</u>, her claim is based solely on supervisor sexual harassment without a related tangible employment action, thereby constituting a "hostile work environment" claim against Hunt for vicarious liability only.

[16]  <u>Casiano</u>, 213 F.3d at 284.

conceded for purposes of its summary judgment motion, that Thompson's and Gorum's conduct was sufficiently severe and pervasive to constitute an actionable hostile workplace environment. Having so conceded, Hunt could nevertheless avoid vicarious liability by establishing, pursuant to Ellerth/Faragher, that (1) it exercised reasonable care to prevent and promptly remedy the harassment and (2) Wyatt unreasonably failed to use the preventative and remedial opportunities provided by the Hunt.[17]

Here, the district court concluded that Hunt had satisfied both prongs of the Ellerth/Faragher defense and thus was not vicariously liable to Wyatt for the actions of Gorum or Thompson. In concluding that Hunt satisfied the first prong, the court recited the undisputed facts that Hunt maintained a sexual harassment policy which it promulgated to all employees, including Wyatt, and that she knew that the policy instructed employees to report harassing incidents and to whom the report should be made. In addition, Hunt held regular meetings with its supervisory staff to train them on preventing sexual harassment. Also, as soon as Rachal and Manthei learned of the November 12th incident and Thompson's previous behavior, an investigation was immediately initiated and within three days (one or two days after Rachal and Manthei were so informed) both Gorum and Thompson were fired.

The court concluded that Hunt satisfied the second prong of

_____

[17] Id.

9

the Ellerth/Faragher affirmative defense as well.  Wyatt concedes that, prior to the November 12th incident, she complained only to Gorum about Thompson's untoward behavior between its onset and the time Gorum started to harass her —— approximately March through June, 1994 —— and that she never reported Gorum's allegedly harassing conduct to anyone.  The court noted that Hunt's policy did not restrict Wyatt to reporting Thompson's behavior only to Gorum and that Wyatt could have reported Thompson's harassment to other supervisors listed in the sexual harassment policy, especially once it became clear to Wyatt that Gorum was ineffectual in changing Thompson's behavior toward her.  Hunt asserted, and the district court agreed, that Gorum's informal rules and unwritten customary practices, which purportedly forbade employees to bypass his authority, were not reasonable excuses for Wyatt's failure to inform higher management personnel.  The district court was convinced that under these conceded or undisputed facts —— Wyatt's failure to report Thompson's behavior to anyone but Gorum and her failure to report Gorum's behavior to anyone at all —— no reasonable jury could help but find that Wyatt unreasonably failed to use Hunt's preventative and remedial opportunities for reporting and obtaining redress for her supervisor's sexual harassment.

1. Supervisor or Co-Employee?

    a. <u>Thompson</u>

As the <u>Ellerth/Faragher</u> affirmative defense to vicarious liability is available to employers only when the harassing employee who creates the actionable environment is a supervisor, this analysis begins with an assessment of Thompson's job position vis-à-vis Wyatt. An employer's responsibility for sexual harassment by a fellow employee of equal rank is adjudged by a legal standard different from that established by the Court in <u>Ellerth</u> and <u>Faragher</u>, which applies to supervisors only.

Wyatt consistently maintained that Thompson was her immediate supervisor, not her fellow employee of equal rank in the chain of command. Hunt acknowledges that it conceded this fact <u>arguendo</u> for purposes of its summary judgment motion in district court. Apparently as a stray remark, without comment or analysis, the district court referred to Thompson as Wyatt's co-employee, but proceeded —— correctly, we think —— to apply the supervisor test of <u>Ellerth/Faragher</u> anyway. On appeal, Hunt now equivocates, claiming that despite granting <u>arguendo</u> that Thompson was a supervisor, the district court concluded that Thompson was a co-employee, providing an alternative basis for affirmance.

Our review of the concessions and undisputed facts and allegations in the record convinces us that Thompson was Wyatt's supervisor —— a fact that, for all purposes of this case, Hunt has judicially admitted as much and cannot now avoid it by classifying

11

that admission as mere supposition for purposes of summary judgment. As an preliminary matter, we emphasize that the facts proffered by the parties regarding the supervisor/co-employee determination were not contradicted in the district court: Wyatt pointed to Thompson's authority to direct her daily activities and the representations made to her when she began employment; Hunt emphasized Thompson's low wage-earning compensation and his inability directly to hire or fire those in Wyatt's position. We need not resolve this difference in viewpoint, however, to reach our conclusion that Thompson was Wyatt's supervisor. Instead, we base our decision on (1) Thompson's deposition testimony and (2) Hunt's verified answer to Wyatt's complaint.

When, in his deposition, Thompson was asked by Wyatt's attorney about his employment position, Thompson described himself as a supervisor. Specifically, he testified that he supervised Wyatt's daily activities, and that, in turn, he was under the immediate supervision of Gorum.

More legally determinative than Thompson's self-description as Wyatt's supervisor, however, is Hunt's unqualified admission of that fact in its answer to Wyatt's complaint. In paragraph 4, Wyatt's state court petition alleged that her "immediate supervisor was John Thompson. Mr. Thompson was supervised by Donald Gorum who also supervised petitioner [Wyatt]." Hunt's verified answer to Wyatt's petition states that "[w]ith respect to the allegations of Paragraph 4 of the Petition, Hunt admits that from the time she was

12

employed until approximately November 14, 1994, [Wyatt's] immediate supervisor was John Thompson and Mr. Thompson's supervisor was Donald Gorum." With this unequivocal judicial admission in the record, Hunt's contention that it merely conceded Thompson's supervisory status arguendo rings hollow.[18] We therefore proceed from the premise that Thompson was Wyatt's immediate supervisor, thereby justifying the application of the Ellerth/Faragher test for vicarious liability, holding that Hunt is estopped from claiming otherwise.[19]

b. Gorum

None question that Gorum was a supervisor. Neither is it contested that he supervised both Wyatt and Thompson.

---

[18] Martinez v. Bally's Louisiana, Inc., 244 F.3d 474, 476 (5th Cir. 2001):
> A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention.... "A judicial admission is conclusive, unless the court allows it to be withdrawn...." (internal citations omitted).

See also American Automobile Assoc. v. AAA Legal Clinic of Jefferson Crooke, 930 F.2d 1117, 1120 (5th cir. 1991):
> In form and substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial.... An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply because it finds the evidence presented by the party against whom the admission operates more credible. (internal quotations and citations omitted).

[19] In light of Hunt's admission, we disregard the district court's conclusional statement that Thompson was Wyatt's co-employee.

13

## 2. Distinct Periods of Harassment

Having concluded that both Thompson and Gorum were Wyatt's supervisors for purposes of determining Hunt's vicarious liability, and before turning to the merits of Wyatt's harassment claims and Hunt's affirmative defense, we parse Wyatt's career path at Hunt, which comprised three discrete periods. Wyatt began her employment in March of 1994. Her uncontradicted allegation that Thompson began harassing her almost immediately establishes the commencement of the initial period of supervisor harassment. Despite Gorum's alleged talks with Thompson, the harassment by Thompson appears to have continued unabated until late June or early July, when Gorum himself became a harasser, continually propositioning Wyatt for sex and making lewd comments. Wyatt's admission that she did not thereafter report either Thompson's behavior or this behavior by Gorum to his supervisors or others listed in the sexual harassment policy manual establishes late June or early July as the end of the first discrete period of harassment. It also establishes July 1, 1994 as the approximate start date of the second discrete period of supervisor harassment. Then, as recounted in detail above, Wyatt's pants were pulled down on November 12th, after which Gorum's supervisors became aware of the situation and terminated both Thompson and Gorum within three days thereafter. Thus November 15 marks the end of the second period of supervisor harassment and the initiation of the third discrete period of Wyatt's employment, during which no supervisor sexual harassment is alleged.

14

Thus, the facts of this case neatly divide Wyatt's employment with Hunt into three distinct periods for purposes of our analysis of her sexual harassment claims: (1) March 1994 to late June/early July 1994, during which Thompson's alleged sexual harassment of Wyatt took place and was reported by her to Gorum; (2) late June/early July to November 15th, during which period both Thompson and Gorum allegedly harassed her sexually, and she made no further reports to Hunt management personnel until the pants incident, which she reported, resulting in prompt and effective response by Hunt; and (3) November 16 1994 until she quit in May 1995, at no time during which does she claim to have been sexually harassed by Thompson or Gorum, who had been fired, or by other Hunt supervisors (although Wyatt's co-workers shunned her doing that final period for having ratted on Thompson and Gorum).

3. <u>Hunt's Affirmative Defense Under</u> Ellerth <u>and</u> Faragher

Keeping the three distinct periods of Wyatt's continuous employment at Hunt in mind, we now address Hunt's affirmative defense to vicarious liability for its supervisors' actions. First, we fully agree with the district court's grant of summary judgment in favor of Hunt for the second and third periods of Wyatt's employment, as to both Thompson and Gorum. After it became clear to Wyatt that Gorum was not only ineffective in dealing with Thompson's harassment, but that he (Gorum) himself was a sexual harasser, Wyatt's failure to report either Thompson's or Gorum's behavior to one or more among the other individuals listed in the

15

sexual harassment policy was unreasonable.

Hunt's policy made clear that several persons in addition to the employee's immediate and next higher supervisors were available to receive and pursue sexual harassment claims. When Gorum's harassment began, Wyatt's reasonable (not to mention obvious) course of action would have been to report Thompson's and Gorum's conduct to one of those individuals with authority higher than Gorum's. Wyatt's reliance on Gorum's unofficial and informal admonitions not to "go over his head" do not excuse her failure to disclose harassment to a higher authority at Hunt. Her failure to act was not reasonable, especially when Gorum was one of the persons who was creating the actionable hostile environment. When Hunt's higher management personnel became aware of Thompson's sexually harassing conduct and Gorum's misrepresentation of it, Thompson and Gorum were suspended, investigated, and fired promptly. As Hunt's sexual harassment policy and its implementation of the policy are more than adequate, Hunt is entitled to summary judgment dismissing Wyatt's claims for any sexual harassment by Thompson or Gorum that may have occurred between early July and mid-November 1994.

Similarly, under the Ellerth/Faragher test, Hunt cannot be held vicariously liable for any supervisor sexual harassment after November 15th, as none of Wyatt's allegations relative to that third period of her employment implicates sexual harassment, much less harassment by supervisors. Wyatt's complaints about shunning

16

or ostracism by fellow workers during that third period do not implicate sexual harassment. In addition, as soon as higher management became aware of the pants incident, Hunt immediately responded to its supervisors' sexual harassment by suspending Thompson and Gorum, commencing an investigation, firing them, and counseling employees against mistreating Wyatt. Thus, when the facts are viewed in the light most favorable to Wyatt, Hunt cannot be held vicariously liable to her for occurrences during the third period because she cannot establish either that (1) actual sexual harassment by supervisors continued during the third period, or (2) Hunt unreasonably and dilatorily responded once higher management personnel became aware of the supervisor sexual harassment, because none occurred.

More problematic, however, is the initial four-month period of Wyatt's employment, from March until early July, 1994. During this time, Wyatt's immediate supervisor, Thompson, harassed her; and she responded by promptly and appropriately reporting Thompson's behavior to Gorum, his immediate supervisor and her successively higher supervisor. In doing so she complied reasonably with Hunt's policy and procedures. Yet, if any remedial action were taken by Gorum, it was wholly ineffectual: Thompson's harassment of Wyatt continued unabated.

Under the Ellerth/Faragher rubric, the one affirmative defense open to Hunt for Wyatt's first period of employment fails because her actions were reasonable: After promptly reporting Thompson's

17

conduct to Gorum, who assured Wyatt that he would handle the situation, nothing in Hunt's harassment policy and procedures required Wyatt to take additional steps, at least not during the relatively short duration of that first period.  Therefore, for the period that began with Wyatt's first report to Gorum of Thompson's harassment and ended when Gorum himself began harassing Wyatt, Hunt cannot establish the second prong of the conjunctive Ellerth/Faragher affirmative defense:  Hunt cannot show that Wyatt unreasonably failed to use the preventative and remedial opportunities provided by the employer.[20]

Our plenary review convinces us that Hunt is not entitled to summary judgment of dismissal as to this one aspect of Wyatt's complaint, i.e., her claim that Hunt is vicariously liable for sexual harassment by her supervisor, Thompson, during the period of March through July, 1994.  We must therefore reverse the district court's grant of Hunt's summary judgment to the extent it dismissed this portion of Wyatt's action, even though we affirm as to all other aspects of the district court's ruling.

In partially reversing and remanding for further proceedings, however, we note that Wyatt's burden on remand remains substantial. She must establish a prima facie claim of hostile work environment supervisor sexual harassment for this initial period of her

---

[20]   See Faragher, 524 U.S. at 807.

employment.[21]     As we noted in our detailed recounting of the Ellerth/Faragher analysis, Wyatt will have to show that Thompson's conduct was sufficiently severe and pervasive to be actionable sexual harassment.[22] Hunt is estopped to deny Thompson's supervisor status because of its unequivocal and unconditional admission in its pleadings, but Hunt has conceded that Thompson's actions were sufficiently severe and pervasive only for purposes of its summary judgment motion and this appeal.  That concession, in conjunction with our conclusion regarding the viability of Hunt's affirmative defense to Wyatt's first period of employment, gain Wyatt only the opportunity, on remand to the district court, to prove the severity and pervasiveness of Thompson's conduct during Wyatt's employment at Hunt between March to July of 1994.  If, but only if, she can bear that burden will she be entitled to recover from Hunt such damages as she may then be able to prove.

## C.  Dismissal of State Law Tort Claims

Wyatt also asserts various state law tort claims against Hunt premised on the Louisiana state law version of vicarious (respondeat superior) liability.  The Louisiana Supreme Court has clarified that an employer is vicariously liable for an employee's tort if the "employee was acting within the course and scope of his

---

[21]  See Casiano, 213 F.3d 278.

[22]  Id.

19

employment."[23]   In considering whether an employer can be held liable for a supervisor's actions in committing a tort against a fellow employee, the Louisiana Supreme Court considers the following four factors:

(1) whether the tortious act as primarily employment rooted;
(2) whether the [tortious act] was reasonably incidental to the performance of the employee's duties;
(3) whether the act occurred on the employer's premises; and
(4) whether it occurred during the hours of employment.[24]

Not all four factors must be found to favor the employee for liability to attach, but an employer cannot be held liable if only the last two factors are met.[25]

Here, the district court concluded that Hunt could not be held vicariously liable for Thompson's and Gorum's actions.  It is apparent that Thompson's actions were not related to his duties but instead were rooted in personal motives unrelated to employment. The most that can be said is that his behavior occurred on Hunt's premises during work hours, but alone this is not enough to produce state law vicarious liability.   Similarly, given Wyatt's allegations that Gorum (1) acted inappropriately towards her, (2) mishandled her complaints about Thompson, and (3) misrepresented the facts to higher management or hid them from management, Gorum's conduct cannot be understood as advancing Hunt's legitimate

---

[23]  Baumeister v. Plunkett, 673 So.2d 994, 996-97 (La. 1996).

[24]  Id. (quoting LeBrane v. Lewis, 293 So.2d 216, 218 (La. 1974)).

[25]  Id.

business interests. Thus, the district court's conclusion that Thompson and Gorum were acting out of personal motives unrelated to their employment, thereby exonerating Hunt from state law vicarious liability for their supervisory employees' actions, was correct and is affirmed.

## D. Denial of Jury Trial

The last question before us is whether Wyatt is entitled to a jury trial in federal court despite having forfeited her demand for a jury trial in state court by failing to meet the bond requirement attendant on such demands in state court. The district court ruled that Wyatt's waiver of her right to a jury trial in state court, caused by her failure to post a bond as required by state (but not federal) law, vitiated her entitlement to a jury trial in federal court following removal. We, however, can find no authority for the proposition that a litigant in a removed action loses her right to a federal jury trial by any act or omission in connection with a state requirement that is not applicable in federal court.

To the contrary, Federal Rule of Civil Procedure 81(c) speaks in broad terms, stating that "[i]f at the time of removal all necessary pleadings have been served, a party entitled to trial by jury under Rule 38 shall be accorded it, if the party's demand therefor is served ... within 10 days after service on the party of the notice of filing the petition." In addition, federal appellate case law supports the view that a party need not file a new jury

21

demand in federal court if one that would have satisfied the federal requirements was filed in state court.[26]

Here, the demand for a jury trial contained in Wyatt's complaint would have satisfied Federal Rule 38(b).[27] Further, although Hunt answered the complaint before removal to federal court, Federal Insurance Company, the added defendant, did not answer until April 17, 2000, two months after removal. Wyatt reasserted her demand for a jury trial in a motion filed in federal court on April 26, 2000, thus bringing her within the ambit of Rule 38(b) regardless of our conclusion that her jury trial demand was automatically carried with her case when it was removed to federal court. We are therefore constrained to reverse the

---

[26] See Mondor v. United States District Court for the Central District of California, 910 F.2d 585, 586-87 (9th Cir. 1990):
> [T]he majority of federal courts addressing the issue held that a new jury demand need not be filed after removal where one had been filed in state court because the previously filed demand became a part of the federal court record.
> ...
> We therefore hold that, where a pre-removal jury demand would satisfy federal but not state requirements, that demand is incorporated into the federal record upon removal, and is deemed to satisfy Rule 38(b).
see also Wright & Miller, Federal Practice and Procedure, § 2319 anc accompany notes (citing Mondor v. U.S.; also citing Bush v. Allstate Ins. Co, 425 F.2d 393, 395-96 (5th Cir. 1970) for the proposition that "even if a party has waived his right to jury trial in state court by a failure to demand it as required by state procedure, he has a new opportunity to demand the right on removal to a federal court.").

[27] Fed. R. Civ. P. 38(b) requires that a party make the demand in writing and serve it on the opposing party within 10 days of the last pleading directed to the issue on which jury trial is requested.

22

district court's denial of Wyatt's demand for a jury trial.

### III. SUMMARY

We affirm the district court's dismissal of Wyatt's state law vicarious liability claims, but we reverse the court's denial of her request for a federal jury trial. We affirm the district court's grant of summary judgment on Hunt's vicarious liability for the actionable environment created by its supervisors to the extent that judgment dismissed Wyatt's federal claims grounded in Gorum's conduct, as well as those grounded in Thompson's conduct after late June, 1994. We reverse and remand, however, for further proceedings addressing, <u>inter alia</u>, the severity and pervasiveness of the sexual harassment of Wyatt by Hunt's supervisor, Thompson, for the portion of Wyatt's employment spanning the period of March 1994 through June 1994. If the results of such further proceedings lead to trial, Wyatt must be afforded a jury trial.

AFFIRMED in part; REVERSED and REMANDED in part, with instructions.