# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 5, 2008

Charles R. Fulbruge III
Clerk

No. 07-50434

LAUREN BROWNING

Plaintiff - Appellant

v.

SOUTHWEST RESEARCH INSTITUTE

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:05-CV-245

Before JONES, Chief Judge, and GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[*]

Lauren Browning appeals the summary judgment dismissal of her wage discrimination, failure to promote, retaliation, and constructive discharge claims based on Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and of her wage discrimination and retaliation claims based on the Equal Pay Act ("EPA"), 29 U.S.C. §§ 206(d), 215(a)(3). We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.

Lauren Browning was employed by the Southwest Research Institute ("the Institute") from December 7, 1998, to May 21, 2004. She was initially hired as a one-year contract employee in the Institute's Center for Nuclear Waste Regulatory Analyses.[1] This limited-term contract was extended in December 1999, and Browning was retained as a Research Scientist on a regular basis beginning October 14, 2000.[2] On May 10, 2004, Browning resigned from her position with the Institute. Her resignation took effect on May 21.

It is undisputed that Browning was a productive and valuable employee. Her performance evaluations, the testimony of her supervisors, and her accomplishments while employed at the Institute reflect this fact. What is disputed is whether, despite her abilities, the Institute discriminated against Browning in the terms of her employment and retaliated against her in response to her complaints about such alleged discrimination. Browning alleges that the Institute discriminated against her because of her gender by paying her less than male employees with similar positions were paid, by failing to promote her, by retaliating against her because of her complaints about such discrimination, and by constructively discharging her.

The district court granted summary judgment in favor of the Institute as to each of these claims.[3] Browning now appeals. After stating the appropriate

---

[1] The Institute is a non-profit institution that conducts broad-based scientific and engineering research, development, analysis, and exploration across many disciplines. The Institute is organized into divisions, with each division handling a distinct area of research or analysis. During the period of Browning's employment, Division 20, the Center for Nuclear Waste Regulatory Analysis, was devoted exclusively to projects sponsored by the U.S. Nuclear Regulatory Commission.

[2] The Institute's technical staff is organized progressively along the following career ladder: Scientists, Research Scientists, Senior Research Scientists, Principal Scientists, Staff Scientists, and Institute Scientists.

[3] The district court referred all pretrial matters, including summary judgment proceedings, to a magistrate judge. The magistrate judge issued a Memorandum and

standard of review, we address her arguments, bringing additional specificity to the factual background of this case as required to address each claim.

## II.

We review the district court's grant of summary judgment de novo, applying the same legal standard as the district court. Rachid v. Jack in the Box, Inc., 376 F.3d 305, 308 (5th Cir. 2004). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." Freeman v. Tex. Dep't. of Crim. Justice, 369 F.3d 854, 860 (5th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Once the moving party meets its initial burden, the nonmoving party "must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmoving party, however, "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Freeman, 369 F.3d at 860 (citation omitted). Further, a fact is material only "if its resolution could affect the outcome of the action." Wyatt v. Hunt Plywood Co., Inc., 297 F.3d 405, 409 (5th Cir. 2002). We review all facts in the light most favorable to the non-moving party. Rachid, 376 F.3d at 308.

## III.

Because Browning presents no direct and express evidence of unlawful discrimination, her claim is analyzed using the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Wallace v. Methodist

---

Recommendation on the Institute's motion for summary judgment. The district court, after reviewing the Memorandum and Recommendation and Browning's objections to it, adopted the Memorandum and Recommendation in its entirety and granted the Institute's motion for summary judgment. Consistent with this, we reference the arguments and conclusions presented in the Memorandum and Recommendation as those of the district court.

Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2001). Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case. Id. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'" Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. Rachid, 376 F.3d at 312.

## A.

Browning argues that the district court erred in granting summary judgment on her Title VII and EPA claims for wage discrimination.

Both Title VII and the EPA prohibit employers from discriminating in compensation based on sex. See 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 206(d)(1). Under both Title VII and the EPA, if a plaintiff establishes a prima facie case of wage discrimination, which for the sake of argument we will assume Browning has done, then the employer can respond with evidence that the disparate wage payments were made "pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1); Jones v. Flagship Intern., 793 F.2d 714, 723 n.8 (5th Cir. 1986) (noting that Title VII incorporates the EPA's four defenses to a wage discrimination claim). Factors other than sex include, among other things, employees' "[d]ifferent job levels, different skill levels, previous training, and experience." Pouncy v.

Prudential Ins. Co., 668 F.2d 795, 803 (5th Cir. 1982). If an employer responds with legitimate, non-discriminatory reasons for an alleged pay disparity, the plaintiff must then show that the purported reason is a pretext for discrimination. See Plemer v. Parsons-Gilbane, 713 F.2d 1127, 1137 n.8 (5th Cir. 1983) (applying Title VII pretext standard to EPA cases).

In its motion for summary judgment, the Institute referenced testimony and other evidence that demonstrated that Browning's salary reflected her prior work experience, seniority, job title, field of study, and contributions to the work of the Institute. Having made this showing, Browning was required to raise a genuine issue of fact as to whether the purported reasons were pretextual.

As to this, the Institute argues as a threshold matter that Browning is now introducing, for the first time, arguments regarding certain male employees of the Institute and that, consequently, these arguments were not preserved for appellate review. Browning contends that these arguments and the related evidence were properly before the district court and therefore were preserved for appellate review. However, a careful review of the record shows that Browning did not provide the Institute an opportunity to address nor the district court an opportunity to rule on the arguments she now presents. We therefore hold that Browning waived any argument that she might have as to those male employees of the Institute who are now so thoroughly discussed in her briefs to this Court. See FDIC v. Mijalis, 15 F.3d 1314, 1327 (5th Cir. 1994) (noting that if a "litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court. If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal").[4]

---

[4] In her objections to the magistrate judges's Memorandum and Recommendation, Browning reasserted her broad argument that her pay was generally and discriminatorily disparate in relation to all male Research Scientists, Senior Research Scientists, and Principal Scientists. She also, however, for the first time mentioned several individuals—both Research

Thus, Browning's wage discrimination claims fail because Browning failed to raise a genuine issue of material fact as to whether the Institute's purported legitimate, non-discriminatory reasons for her allegedly disparate wage payments were a pretext for discrimination. The Institute offered testimony and other evidence that demonstrates that Browning's salary reflected her prior work experience, seniority, job title, field of study, and contributions to the work of the Institute; and Browning offers no evidence–beyond conclusory allegations—that raises a genuine issue of fact as to whether these purported reasons were pretextual. Moreover, the Institute referenced testimony and other evidence that demonstrates that any pay disparities between Browning and those individuals she had identified in her deposition testimony as occupying a comparable position at the Institute were the product of legitimate, non-discriminatory reasons; and Browning does not challenge these arguments. We therefore hold that the district court appropriately dismissed Browning's Title VII and EPA wage discrimination claims.

B.

---

Scientists and Senior Research Scientists—who received a higher salary than she did. Her arguments regarding these individuals are vague and insufficient to raise a general issue of material fact regarding whether the Institute's offered reasons for her salary were pretextual. Indeed, her arguments were not even directed at showing that the Institute's offered reasons were pretextual. Moreover, the district court did not address Browning's arguments regarding these individuals, and Browning has presented no argument that the district court's failure to address these arguments was an abuse of discretion. See Requena-Rodriguez v. Pasquarell, 190 F.3d 299, 307 n.27 (5th Cir. 1999) (noting that a district court has power "to decide that legal arguments not raised before a magistrate judge are waived"). Finally, we are further confirmed in our belief that Browning presented only a vague argument regarding all male Research Scientists, Senior Research Scientists, and Principal Scientists by her reply to the Institute's response to her objections, which once again reasserted this argument and, in a footnote, objected to any requirement that she must name, with specificity, male employees whom she contends received higher pay. While it may be true that Browning was not required to name, with specificity, male employees who received higher pay to establish her prima facie case, she did need to present some evidence, by way of comparison with male employees or otherwise, that the Institute's offered reasons for her salary were pretextual—and she did not.

Browning also argues that the district court erred in granting summary judgment on her Title VII failure to promote claim.

To establish a prima facie case for a failure to promote claim, a plaintiff must establish that: (1) she is a member of the protected class; (2) she applied for a position for which she was qualified; (3) she was rejected for the position; and (4) after she was rejected, the employer continued to seek applicants with the employee's qualifications or filled the position with someone outside the protected class. See Celestine v. Petroleos de Venezuella, S.A., 266 F.3d 343, 354-55 (5th Cir. 2001). A plaintiff must establish that she meets objective promotion criteria at the prima facie stage of her case. See Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 681 (5th Cir.2001). If a plaintiff makes out a prima facie case, we analyze the claim under the familiar McDonnell Douglas burden-shifting framework described above. Id.

The Institute argues that Browning failed to establish a prima facie case on her failure to promote claim because she failed to offer evidence that she was qualified for the position she sought and failed to offer evidence that the Institute sought applicants with similar qualifications.[5] As to each of these arguments, the Institute relies only on the fact that Browning did not receive two "Clearly Outstanding" ratings on her annual performance evaluations and that, as a matter of policy, the Institute does not promote employees who have not received two such ratings.[6] The Institute argues that the relevant

[5] The position Browning sought was eventually filled by a female. Although relevant to whether the Institute had a discriminatory intent, this fact is insufficient to defeat Browning's prima facie case. See Nieto v. L & H Packing Co., 108 F.3d 621, 624 n.7 (5th Cir.1997) ("While the fact that one's replacement is of another national origin 'may help to raise an inference of discrimination, it is neither a sufficient nor a necessary condition.'" (quoting Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir. 1996)).

[6] The Institute annually evaluates each employee's performance and assigns one of five possible ratings: Clearly Outstanding, Exceeds Expectations, Meets Expectations, Needs Improvement, or Unsatisfactory. Pluses and minuses are attached to these ratings to indicate that an employee's performance is within an intermediate range. While employed at the

performance criteria are objective and that because Browning failed to meet them she cannot establish a prima facie case.

In response, Browning argues that the Institute's performance evaluations are wholly subjective and that, consequently, the Institute's arguments do not defeat the second and fourth elements of her prima facie case.

Here, Browning has the better side of the argument. The Institute's internal documents indicate that "some of these criteria [used in staff evaluations] are subjective." Moreover, deposition testimony of the individuals who performed the evaluations relevant here indicates that no objective criteria control the evaluations and that no objective measures distinguish one rating from another. As one of the evaluators testified, the evaluators simply "have a pretty good idea of the break point" between ratings. The evidence, then, indicates that the performance evaluations are subjective, as Browning argues. Further, and "[a]s we have indicated before, an employer may not 'utilize wholly subjective standards by which to judge its employees' qualifications and then plead lack of qualification when its promotion process . . . is challenged as discriminatory.'" Medina, 238 F.3d at 681 (alteration in original) (quoting Crawford v. West. Elec. Co., 614 F.2d 1300, 1315 (5th Cir.1980)). This is true because "'the criteria . . . may be pretext for . . . discrimination.'" Id. Consequently, we hold that Browning has established a prima facie case for her failure to promote claim.

Because Browning has established a prima facie case, the burden shifts to the Institute to articulate a legitimate, non-discriminatory reason for its actions. Here, the Institute's subjective performance evaluations are sufficient to establish a legitimate, non-discriminatory reason for its failure to promote

Institute, Browning received the following ratings: 1999, Exceeds Expectations; 2000, Exceeds Expectations; 2001, Exceeds Expectations; 2002, Exceeds Expectations Minus; 2003, Meets Expectations Minus; 2004, Meets Expectations Minus.

Browning to the position she sought. See Alvarado v. Tex. Rangers, 492 F.3d 605, 616 (5th Cir. 2007) ("An employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection."); Manning v. Chevron Chem. Co., 332 F.3d 874, 882 (5th Cir. 2003) (affirming grant of summary judgment because employee did not raise genuine issue of fact that subjective hiring criteria were pretext for discrimination). But because subjective reasons can be a pretext for discrimination, such "reason[s] will satisfy the employer's burden of production . . . only if the employer articulates a clear and reasonably specific basis for its subjective assessment." Alvarado, 492 F.3d at 616. Browning's performance evaluations and the testimony of the individuals who evaluated her performance reference clear and reasonably specific bases for the Institute's subjective assessments. Browning's performance evaluations, for instance, indicate, among other things, that she made gratuitous, negative comments about her colleagues; discussed internal Institute matters with clients; failed to follow Institute procedures; made an unauthorized business trip; failed accurately to report her time; and was reluctant to participate in certain Institute initiatives.

Because the Institute has articulated a legitimate, non-discriminatory reason for not offering Browning a promotion, her prima facie case is dissolved and the burden shifts back to her to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. See Rachid, 376 F.3d at 312.

Browning has attempted to establish that the Institute's asserted justifications are pretextual in several ways. First, Browning argues that the subjective nature of the Institute's performance evaluations allowed the

Institute to suppress her rating. We have held, however, that "[t]he mere fact that an employer uses subjective criteria is not . . . sufficient evidence of pretext." Manning, 332 F.3d at 882. Second, Browning testified that the alleged failure accurately to report her time was a pretextual motive manufactured by the Institute. She does not, however, offer any evidence beyond her conclusory allegation to this effect, nor does she challenge the other asserted inadequacies that are noted in her performance evaluations. Third, Browning asserts that the Institute more strictly judged her performance than that of male employees. Her citations to the record, however, demonstrate exactly the contrary. She first directs the Court to the performance evaluations of a male employee who received better evaluations than she did. These evaluations also indicate that the employee had time management issues, but these issues were hardly of the sort referenced in Browning's evaluations. Indeed, the evaluators urged the employee, for instance, "to try to achieve a better balance between devotion to his career and attention to his personal health." Browning also directs the court to the performance evaluations of a second male employee. This employee's evaluations demonstrate some interpersonal problems; the evaluators, for instance, note that "he often creates the perception that he is the single oracle-like source of . . . knowledge in the program" and "needs to develop an image of quiet, confident technical competence." Fatal to Browning's comparison, however, is that this employee did not receive more favorable evaluations.

Based on the evidence offered by Browning, no trier of fact reasonably can infer that the Institute is dissembling to cover up a discriminatory purpose. Indeed, Browning has offered no evidence of discriminatory intent: she does not offer evidence that any Institute employee made sexist comments, that the Institute has a pattern or practice of discriminating against females, or that the individuals who evaluated her performance have ever been accused of discrimination based on sex or ever behaved in a manner that evidences such a

possibility. Indeed, her only arguments that the Institute's asserted justifications are pretextual are those noted above, and there is little in the way of record evidence in support of these arguments. Thus, Browning has failed to carry her burden of establishing that the Institute's asserted justifications for not offering her the promotion she sought are pretextual. The district court did not therefore err in granting summary judgment on this claim.

C.

Browning also argues that the district court erred in granting summary judgment on her Title VII and EPA retaliation claims.

Both Title VII and the EPA—through the Fair Labor Standards Act ("FLSA")— prohibit employers from retaliating against employees who engage in activity protected under the respective acts. See 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 215(a)(3). To establish either a Title VII or an EPA retaliation claim, a plaintiff must establish, among other things, that she suffered an adverse employment action. Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 325 (5th Cir. 2002); Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 624 (5th Cir. 2008) (applying the same requirement in an FLSA case).

The Institute argues that Browning cannot establish a prima facie case of retaliation because she suffered no adverse employment action. The Supreme Court recently clarified that a retaliation claim may rest on an action that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citation and internal quotation marks omitted). This standard, as the Supreme Court noted, is phrased "in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." Id. at 69. Context matters because "'[t]he real social impact of workplace behavior often depends

on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.'" Id. at 69 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81–82 (1998)). Further, the Supreme Court noted that the materiality requirement reflects the importance of separating "significant from trivial harms." Id. at 68. With this standard in mind, we examine the incidents of retaliatory conduct alleged by Browning.

Browning alleges that the Institute engaged in a pattern of retaliation against her. Browning's strongest allegation is that the Institute retaliated against her by reducing her job responsibilities. It is undisputed that the Institute removed Browning from the Principal Investigator position of the Quantity and Chemistry Integrated Subissue. The loss of job responsibilities can in some circumstances constitute an adverse employment action. But as the Institute argues and as Browning admits, the Institute periodically rotates its scientists into and out of lead roles like the one Browning held. Indeed, Browning's deposition testimony references several examples of this. As noted above, we have been instructed to consider the "particular circumstances" and the "real social impact of workplace behavior." Under these circumstances, we are certain that Browning's seemingly normal rotation out of the Principal Investigator position, with no specific association with protected activity, would not dissuade a reasonable worker from making or supporting a charge of discrimination.

Browning also alleges that the Institute retaliated against her by badgering, harassing, and humiliating her. Here, Browning first alleges that when she confronted a supervisor about her allegedly unequal pay, he responded by threatening to fire her. Her deposition testimony indicates the supervisor told her that he could fire her for cause and that Texas is a right to work state. Her notes from that meeting, however, also indicate that the supervisor made

this comment in relation to a discussion of whether Browning would soon be receiving a significant pay increase. According to Browning's notes, the supervisor praised her performance but also noted that her violations of Institute policies—violations which were sufficient grounds to fire her with cause—suppressed her overall performance rating, which of course affected whether she would be promoted and whether her pay would be increased. Browning even notes that the supervisor "offered [her] a carrot" by indicating that if her attitude improved her performance evaluations would also improve. Given Browning's testimony and the evidence she presented about this conversation, we are also certain that this alleged threat would not dissuade a reasonable worker from making or supporting a charge of discrimination. Indeed, there is no indication that this conversation was anything other than an attempt to discuss Browning's concerns about her pay.

Next, Browning alleges that another supervisor reacted to her with verbal abuse and threatened her employment when she confronted him about her allegedly unequal pay. As Browning presents the argument in her brief, the supervisor told her she was "crazy," which was "a humiliating, demeaning form of badgering," and then threatened her employment. Browning's notes from this conversation, however, show the nature of the exchange between the two of them. According to Browning, the supervisor responded to her complaint by saying: "If you or anyone else thinks that something unethical is going on around here, then I suggest that you avail yourselves of the free psychiatric services provided by the Institute." And then, in discussing her performance evaluations, said: "What you have to realize is that . . . [w]e are management, you are the employee. We make the rules, and you follow them. It's as simple as that. And if you don't think that what we are doing is fair, then there is the door." Again, Browning's evidence indicates that this heated exchange of words in a work place confrontation presents no set of facts that constitute retaliation. This

alleged verbal abuse, like that discussed above, amounts at best to nothing more than the "petty slights" or "minor annoyances" that all employees face from time to time.  White, 548 U.S. at 68.

Finally, Browning alleges that the Institute retaliated against her by: attempting to hire an employee to take her position and by forcing her to interview and evaluate job applicants as a part of this process; suppressing her performance evaluations; and subjecting her to extra scrutiny.  Browning, however, presents nothing but conclusory allegations to support these assertions.  Browning offered no evidence that indicates that the Institute was attempting to hire her replacement, nor any evidence that her performance evaluations were suppressed, nor any evidence that she was subjected to extra, oppressive scrutiny.  Browning's "[c]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" her summary judgment burden.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) (citation omitted).

Thus, we hold that Browning has not established a prima facie case for her Title VII and EPA retaliation claims because she has not created a genuine issue of fact regarding whether she suffered an adverse employment action.  Further, and consequently, the district court did not err in granting summary judgment on these claims.

D.

Finally, Browning argues that the district court erred in granting summary judgment on her Title VII constructive discharge claim.  As we have earlier said, Browning decided to resign from the Institute and did so in May of 2004.  She argues that her resignation was compelled by the hostile conduct of the Institute toward her.

In determining whether an employer's actions constitute a basis to support a constructive discharge, we ask whether "working conditions [became] so

intolerable that a reasonable person in the employee's position would have felt compelled to resign." Penn. State Police v. Suders, 542 U.S. 129, 141 (2004); see McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir.2007) (stating same standard). "Mere harassment, alone, is insufficient; rather, the plaintiff must show 'aggravating factors' to justify departure." Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 331 (5th Cir. 2004). In determining whether a reasonable employee would feel compelled to resign, we consider the relevancy of the following factors: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; and (7) offers of early retirement on terms that would make the employee worse off. Id. (citation omitted).

The record makes clear that Browning was not demoted, actually received salary increases from 2000 through 2004, was not reassigned to menial work or to a younger supervisor, and was not offered early retirement or less favorable employment terms. Browning argues, however, that she was constructively discharged. Her argument to this effect references the allegedly retaliatory treatment that we have discussed above. But for the reasons discussed above, we hold that Browning's working conditions were not so intolerable that a reasonable person in her situation would have felt compelled to resign. The district court did not therefore err in granting summary judgment on this claim.

## IV.

For the reasons assigned above, the judgment of the district court is AFFIRMED.

AFFIRMED.