Sylvia CHAVERA, Plaintiff,

v.

VICTORIA INDEPENDENT SCHOOL DISTRICT, Defendant.

No. CIV.A. V–01–88.

United States District Court,
S.D. Texas,
Victoria Division.

Aug. 28, 2002.

Robert P. Houston, Houston Marek and Griffin, Bobby D. Brown, Law Office of Bobby D. Brown, Victoria, for Sylvia Chavera, plaintiff.

William W. Seerden, Cullen Carsner Seerden and Cullen, Victoria, for Victoria Independent School District, defendant.

## ORDER

RAINEY, District Judge.

Pending before the Court is Defendant Victoria Independent School District's ("VISD") Motion for Summary Judgment (Dkt.# 29). This motion was brought in response to Plaintiff Sylvia Chavera's suit for sexual harassment and retaliation filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. After considering the parties' arguments and the applicable law, the Court is of the opinion that Defendant's Motion for Summary Judgment should be DENIED.

## BACKGROUND [1]

This action arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), prohibiting unlawful employment discrimination based on gender. 42 U.S.C. § 2000e, *et seq.* Chavera claims she was subjected to sexual harassment and retaliation in violation of Title VII.

Chavera began working for VISD as a part-time custodian at O'Connor Elementary School on January 6, 1996. She worked there until accepting a transfer to Crain Middle School on September 5, 1996, where she continued to work until April 11, 2000. During her employment with VISD, Chavera claims she was subjected to repeated sexual harassment and a sexually hostile work environment by fellow employee and later supervisor, Bobby Coleman.

Chavera's allegations begin with her employment at O'Connor, where she claims

1. On a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. Therefore, the facts presented in this section are either undisputed, or derived from the plaintiff's account of the events.

Coleman attempted to intimidate her and ultimately took a lasso from a western exhibit at the school and roped her. Chavera claims that she complained about this behavior, but VISD did not take any action. She further alleges that Coleman's harassment continued after Coleman was transferred to Crain where Chavera was already working. On January 27, 1998, Coleman was transferred to Crain as Head Night Custodian, becoming Chavera's supervisor. Upon learning of his new assignment, Chavera and Eleanor Gonzalez, President of the Victoria Federation of Teachers, requested that, because of prior sexual harassment incidents, Coleman not be placed as Chavera's supervisor. However, this request was denied and Coleman was assigned as Chavera's supervisor, later being reassigned from Head Night Custodian to the Head Custodian at Crain.

Chavera alleges that Coleman sexually harassed her from his first day at Crain, and continued to harass her until his behavior escalated to an assault on April 11, 2000. On Coleman's first day at Crain, Chavera alleges that Coleman threatened "that she was going to be his." On September 23, 1998, Chavera alleged in a formal complaint that Coleman used "loud, abusive, derogatory language and comments toward me" and "raised his hands as if to strike me." In response to her formal complaint about Coleman's behavior, Chavera met with several of her supervisors. At this meeting, she was assured by her supervisors that the problem would be dealt with. However, the only response Chavera's complaint appears to have received is the publication of an unsigned letter titled "Custodial Expectations" on official letterhead. There is no evidence that Coleman ever received any disciplinary action for this matter, but was only reminded, in the Custodial Expectations letter, that "Sylvia Chavera and Bobby

Coleman will treat each other with respect at all times." On the other hand, Chavera is given several mandates in this same letter that have a disciplinary tone, including such instructions as "Sylvia will help other custodians when she is instructed to do so by Bobby or Arnie" (another supervisor), and "Sylvia will do what she is told to do by Bobby Coleman."

Over the next two years, Chavera alleges that Coleman continued to harass her in several different ways. She alleges that he ordered her to hold on to an electrical cord while he shook the other end of the cord up and down in front of his genitals in a manner that made her feel as if he was making the cord an extension of his genitals. Coleman would also allegedly instruct Chavera and the other female custodians to bend over to pick up the leaves in the school yard, while staring at their buttocks. Coleman organized the gymnasium cleaning so that all the women would be stationed in the bleachers and would have to bend over to pick up the trash. Coleman would stick out his tongue, saying, "you know, you will have a taste of this. Once you go black, you will never come back."[2] Coleman would repeatedly use derogatory and abusive language, such as calling Chavera a "bitch" or telling her she was stupid. At one point, Coleman picked Chavera up and carried her off making her cry. While working in a classroom, Coleman rubbed his arm against Chavera's right breast, although he later claimed it was an accident. Coleman would consistently remark about women's breasts in front of Chavera and would touch other female employees' breasts. When employee photographs came out in 1999, Coleman licked Chavera's photo and said the Spanish word for "ugly," while in the presence of another custodian. Coleman would repeatedly smack his lips and touch his groin

---

2. Coleman is an African–American male.

area while staring at Chavera. Coleman would attempt to isolate Chavera from a fellow female custodian, Josie Espindola, in order to intimidate both women despite the fact that Chavera and Espindola were given permission to work together for medical reasons. Allegedly, Coleman would often deliberately stay late, past his working hours, and would then follow Chavera around the campus and otherwise harass her. At least once, when Chavera arrived at work and attempted to pick up her keys and cleaning equipment, he would try to lure her into the equipment closet by refusing to hand out her keys or equipment, even though he would give out the other custodians' keys and equipment when they would arrive to start work. Coleman attempted both successfully and unsuccessfully to look down female subordinate employees' shirts and would talk about having sex with other women in front of Chavera and other female employees. Chavera and others reported that Coleman was generally disrespectful towards female employees in particular.

Both Chavera and Eleanor Gonzalez, as a union representative on behalf of Chavera and other employees, would intermittently report the harassment to various levels of supervisors and administrators at VISD. VISD's sexual harassment policy requires any supervisor receiving a complaint of sexual harassment to reduce the complaint to writing and have the complainant verify its accuracy. It does not appear that any supervisor at VISD reduced these oral complaints about Coleman's harassment of Chavera and other female custodial employees to writing as required by the policy. Rather, Gonzalez and Chavera allege that they were repeatedly told that "something" would be done about the problem, but there is no indication that any investigations were ever conducted regarding these complaints, and Coleman's personnel file does not indicate that he ever received any dis-

cipline. To the contrary, Chavera alleges that she was told to stop complaining and was given the Custodial Expectations letter which attempted to limit her ability to complain in apparent contravention of VISD's stated sexual harassment policy. Also, Chavera alleges that during this same time period, the principal of Crain, Judy Koenig, was singling Chavera's son out for unusually strict discipline, such as suspension from school for dress code violations, and even physically assaulted Chavera's son on one occasion causing bruises on his arm.

Other female employees at Crain complained to VISD about Coleman's behavior during this same time period. Josie Espindola, Maria Rocha, and Maime Luna all state that they complained about sexually inappropriate behavior exhibited by Coleman during this same time period. For example, Luna states that Coleman came up behind her, picked her up, and flipped her upside down, forcing Luna to hold on to her blouse to keep from exposing herself while he was laughing. Luna alleges that she complained to the superintendent, Ron Peace, about this incident, but no corrective action was ever taken and Coleman continued to behave in this fashion.

Then, on April 11, 2000, Chavera claims that while she was vacuuming a classroom Coleman came in and assaulted her. Chavera claims Coleman grabbed the back of her knees, knocking her to the floor and causing her to sustain several minor physical injuries, and then physically forced her legs open. Upon forcing her legs open, he proceeded to fondle her while attempting to unzip her pants, stick his hand under her shirt, and kiss her. While it is unclear at what point it happened, Chavera's right nipple was bruised during this incident. Chavera alleges that this continued until someone she thought was probably Pat Kocian called Coleman on his walkie talkie

radio approximately three times and Coleman had to get up to answer it. When Chavera told him that she was going to tell somebody what he'd just done, Coleman responded that he was just playing and that no one would believe her because "[h]ow many times have you reported me and they never done nothing to me?"[3] In the same conversation, in what she perceived to be a threatening manner, Coleman ordered Chavera not to say anything about the incident, and reminded her that her son went to school there. On April 13, 2000, Chavera alleges that Coleman approached her son and engaged him in a conversation while at school to reinforce his threat.

The night of the incident, Chavera reported it to the head night custodian, Arnulfo Garcia, who did nothing until the following morning when he filled out an accident report. This next morning, April 12, 2000, Chavera reported the incident to VISD's Director of Maintenance, Ron Leach, as well as several other management personnel at VISD. On April 17, 2000, Leach issued a report on his investigation of the alleged incident which concluded that he could not verify whether Chavera's complaint was valid.

After the incident, Chavera received medical treatment and was diagnosed with several mental and physical problems associated with post-traumatic stress disorder. She was prescribed several medications to control these symptoms, but alleges that she could only afford some of them some of the time because the school had eliminated her worker's compensation benefits after deciding that it couldn't verify that the assault occurred. Under the advice of her counselor and treating physicians, Chavera did not return to work immediately. VISD claims her position remained open to her for some time. However, on August 26, 2000, VISD, through its attorney, informed Chavera's attorneys that her position had been filled, but that a part-time job custodial position was open to her at Patti Welder Middle School. Chavera was still being advised that it would be detrimental to her mental and emotional health for her to return to work at that time. Also, Coleman was still employed by VISD. He was still allowed access to the Crain campus, and it also appears that he was also allowed access to the Patti Welder campus.[4] Chavera did not take VISD up on the offer.

In this same August 26, 2000 letter, VISD informed Chavera that since it did not have evidence that she had been assaulted, she was being denied assault leave.[5]

On December 23, 2000, Coleman resigned from his employment with VISD, citing family reasons for his departure. He was rehired on February 13, 2001. He was neither required to fill out a new application for employment, nor sign the type of contract promising to alter his

3. Deposition of Sylvia Chavera, ("Chavera Depo.") 127:6–7.

4. After Chavera's April 12th complaint, Coleman was transferred from his supervisory position to the position of air conditioner filter mechanic. An October 2001 email from Victor Rendon to Ron Leach and a Tom Garner indicates that Coleman was required to come on the Crain campus as part of his duties in this new position. Drawing all reasonable inferences from this email and Coleman's job title in favor of the non-movant, it appears that Coleman's new duties included changing and/or maintaining air conditioning filters at various VISD campuses. Therefore, VISD would be required to allow him access to all of VISD's campuses to fulfill his duties, which includes the Patti Welder campus. VISD has not produced any evidence to contradict this inference.

5. VISD provides assault leave, which is up to two years of paid leave at the pre-assault salary level, for any employee assaulted at work.

behavior that he had been required to sign to regain his employment when he was terminated in 1994. Coleman was again given the position of an air conditioning filter mechanic upon being rehired in February 2001.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas,* 190 F.3d 310, 314 (5th Cir.1999). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.,* 246 F.3d 500, 502 (5th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322, 106 S.Ct. 2548. If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . ., the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell,* 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 505 (5th Cir.1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Yaquinto v. Segerstrom (In re Segerstrom),* 247 F.3d 218, 223 (5th Cir.2001); *see also Samuel v. Holmes,* 138 F.3d 173, 176 (5th Cir.1998). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Indep. Sch. Dist.,* 233 F.3d 871, 874 (5th Cir.2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.,* 276 F.3d 754, 759 (5th Cir.2002); *see also Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

## B. Title VII Claims

### 1. Sexual Harassment Claim

When analyzing supervisor sexual harassment cases under Title VII, the first step is determining whether the complaining employee suffered a "tangible employment action." *Wyatt v. Hunt Plywood Co., Inc.,* 297 F.3d 405 (5th Cir.2002). If the employee has, the claim is classified as a "quid pro quo" case; if the employee has not, the claim is classified as a "hostile environment" case. *Id.* In a quid pro quo case, proof that a tangible employment action resulted from a supervisor's sexual harassment renders the employer vicariously liable, and no affirmative defense can be asserted. *Id.* An affirmative defense known as the *Ellerth/Faragher* defense is available in a hostile work environment case. *See id.; Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

Chavera's complaint characterizes her sexual harassment claim as a hostile work environment claim. However, in her response to VISD's motion for summary judgment, she argues that VISD is not entitled to the *Ellerth/Faragher* affirmative defense because she was constructively discharged, and that such constructive discharge constitutes a tangible employment action. In her discussion of this issue, Chavera never labels her claim as a "quid pro quo" claim. Regardless of how she labeled it though,[6] Chavera clearly pled a cause of action under Title VII for sexual harassment and claims she was constructively discharged. Therefore, the Court will examine her constructive discharge allegation before deciding whether to characterize her claim as a quid pro quo or a hostile work environment claim.

### (a) Tangible Employment Action/Quid Pro Quo Claim

While not all circuits agree, *see, e.g., Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 294 (2d Cir.1999), *vacated on other grounds sub nom, Robinson v. Metro–North Commuter R.R.,* 267 F.3d 147 (2d Cir.2001) (finding that a constructive discharge can not be a tangible employment action for purposes of a sexual harassment claim), a constructive discharge can be a tangible employment action in the Fifth Circuit, *see Taylor v. Nickels & Dimes, Inc.,* 2002 WL 1827657, 2002 U.S. Dist. LEXIS 14560, *10 (N.D.Tex.2002) ("A resignation is a tangible employment action under Title VII only if the resignation qualifies as a constructive discharge"); *Taylor v. United Regional Health Care Sys., Inc.,* 2001 WL 1012803, 2001 U.S. Dist. LEXIS 12327, *19–20 (N.D.Tex.2001) (stating that "constructive discharge and a failure to promote are 'tangible employment actions' for the purposes of Title VII"); *Galloway v. Matagorda County,* 35 F.Supp.2d 952, 957 (S.D.Tex.1999) ("Constructive discharge qualifies as a tangible or adverse employment action.") (citing *Benningfield v. City of Houston,* 157 F.3d 369, 377–78 (5th Cir. 1998)); *see also Wyatt v. Hunt Plywood Co., Inc.,* 297 F.3d 405, 409 n. 15 (5th Cir.2002) (finding that plaintiff did "not advance a coherent claim of constructive discharge or other tangible employment actions" in a sexual harassment suit); *Webb v. Cardiothoracic Surgery Assocs. of North Texas, P.A.,* 139 F.3d 532, 540 (5th Cir.1998) (finding that plaintiff's failure to support her constructive discharge claim

---

6. "In *Ellerth,* the Supreme Court noted that the terms quid pro quo and hostile work environment, while helpful, are not dispositive." *Green v. Adm'rs of Tulane Educ. Fund,* 284 F.3d 642, 655 n. 5 (5th Cir.2002), *as amended,* 2002 U.S.App. LEXIS 9200 * 3 (5th Cir. April 26, 2002) (citing *Ellerth,* 524 U.S. at 751, 118 S.Ct. 2257).

meant she had failed to show a tangible employment action). In order to prove constructive discharge, an employee must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir.2001); *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771 (5th Cir. 2001); *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir.1997). "Stated more simply, [her] resignation must have been reasonable under all the circumstances." *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir.2000) (quoting *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir.1994)). Along with other salient factors, the Fifth Circuit has indicated that a district court should examine the aggrieved employee's utilization of both internal and external grievance processes before determining whether the conditions faced by the employee rise to the level of constructive discharge. In particular, the Fifth Circuit has noted that prompt remedial action by an employer to correct harassing behavior is fatal to a constructive discharge claim. *See Webb*, 139 F.3d at 539–40.

### 1. Whether a Reasonable Employee Would Have Felt Compelled to Resign

█ The parties disagree about whether Chavera's working conditions were so intolerable that a reasonable employee would have felt compelled to resign. While the parties did not extensively brief the issue of constructive discharge, and only briefed it with regard to retaliation, they did spend considerable time and effort arguing about whether Chavera was subjected to a hostile work environment which involves a similar factual inquiry regarding the level and type of harassment she faced at work.

VISD repeatedly claims that because it never demoted Chavera, cut her salary, or reassigned her to remedial or degrading work, the Court cannot find that a constructive discharge occurred.[7] While those are actions that could indicate a constructive discharge, they are not the only ways an employer can constructively discharge an employee. The Fifth Circuit has listed the following factors for courts to consider when they address constructive discharge claims: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer was accepted or not. *Bunge Corp.*, 207 F.3d at 782 (*citing Barrow*, 10 F.3d at 297).

Of the factors listed by the Fifth Circuit, the one most relevant to the circumstances of this case would be badgering, harassment, or humiliation. VISD attempts to exclude much of Chavera's evidence of such badgering, harassment, and humiliation. However, for the reasons given below, the Court finds that enough of this evidence may be considered to create genuine issues of fact regarding whether Chavera was constructively discharged.

---

**7.** While Chavera does not contradict VISD's assertion that it took no overt action against her, the Court does note that VISD denied Chavera her assault leave. This is an overt act that effectively turned her undefined medical leave into a resignation. However, since the parties did not argue this point, the Court will focus on Chavera's allegations that the harassment was so unbearable that she was forced to resign without examining the reasonableness of VISD's denial of Chavera's assault leave.

**(i) Evidence Outside the Statutory Time Period**

█ VISD first argues that because Chavera filed her Charge of Employment Discrimination jointly with the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights on April 14, 2000, VISD can not be held liable for any conduct that occurred before June 18, 1999, 300 days before filing the charge. Title VII requires plaintiffs to file charges of discrimination with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). However, if the plaintiff has "instituted a proceeding with a State or local agency with authority to grant or seek relief from such practice," the limitations period for filing a charge extends to 300 days. *Id.* Therefore, VISD claims Chavera's evidence of any harassment and/or complaints that took place prior to June 18, 1999 can not be considered by the Court because the incidents occurred outside the actionable period.

When analyzing this issue in the context of a hostile work environment claim, the Supreme Court has recently held that, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Nat'l R.R. Passenger Corp. ("AMTRAK") v. Morgan,* —— U.S. ——, ——, 122 S.Ct. 2061, 2074, 153 L.Ed.2d 106 (2002). The Supreme Court further held that "[i]n order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." *Id.* at 2075.

█ While the Supreme Court did not directly address constructive discharge claims, a constructive discharge claim, like a hostile work environment claim, is based upon the cumulative effect of individual acts, that may not themselves be actionable. It is an inquiry that examines the totality of the circumstances faced by the plaintiff, not a single discrete act of discrimination. Therefore, also like a hostile work environment claim, the Court finds that a constructive discharge claim is comprised of a series of separate acts that collectively constitute one "unlawful employment practice," for purposes of the charge filing requirement of Title VII. *See id.* at 2074. As long as all of the acts are related, and at least one act fell within the 300 day time period, the Court may consider all of the acts in determining whether a violation has occurred. *See id.* at 2075.

Alternatively, even if a constructive discharge is viewed as a single, discrete act of discrimination, the act "occurred" when Chavera quit. This action is clearly within the statutory time period for a Title VII claim. A constructive discharge claim still requires an examination of all of the events that led up to Chavera's resignation in order to determine if a reasonable employee would have felt compelled to quit. Therefore, all of the prior incidents are admissible as evidence of the constructive discharge claim even if they are not individually actionable. Regardless of how the constructive discharge claim is viewed, the Court is allowed to consider evidence of harassment or complaints that occurred outside the statutory time period. VISD's attempt to exclude this evidence on timeliness grounds is denied.

**(ii) Relevance of Some Evidence of Conduct**

█ VISD next attempts to exclude evidence of several incidents alleged by Chavera because it argues that the incidents are not relevant to a sexual harassment claim. First, VISD seeks to exclude evidence of a particular list of incidents because VISD alleges that the incidents only

involved sex-neutral conduct. Sex-neutral conduct cannot be used to support a hostile work environment claim since Title VII does not protect employees from hostile conduct that is not based on their protected status. *See Farpella–Crosby v. Horizon Health Care*, 97 F.3d 803, 806, n. 2 (5th Cir.1996) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)). Specifically, VISD argues that there is no innate sexual connotation in the following incidents: the incident where Chavera alleges Coleman "lassoed" her, the incident involving "loud abusive language and raised hand," the incident where Coleman allegedly licked a photo of Chavera and called her "ugly" in Spanish, the incidents where Coleman allegedly arranged for all of the female employees to have to bend over to pick up trash from the gym bleachers, and incidents where Coleman would allegedly instruct the female employees to bend over to pick up leaves when it was time to rake leaves.

Taking these incidents in the context of Chavera's claim as a whole, and assuming all factual inference in favor of the non-movant, the Court is not convinced that these incidents are so clearly sex-neutral that it must exclude evidence of the incidents from consideration on a motion for summary judgment. To the contrary, at least two of the incidents specifically allege that employees, including Chavera, were targeted because of their sex. This is the opposite of sex-neutral conduct. Therefore, while VISD is free to argue that Chavera's allegations are untrue, the Court will not exclude Chavera's evidence of these incidents from its consideration of the motion for summary judgment.

In a similar attack, VISD attempts to exclude evidence of incidents that it characterizes as incidental, casual, flirting, or teasing. These incidents include: the incident where Coleman told Chavera to give him "some sugar," the incident where

Coleman told Chavera that "once you go black, you will never come back," and the incident where Coleman ordered Chavera to hold on to an electrical cord while he shook the other end of the cord up and down in front of his genitals. While VISD is correct that offhand teasing and isolated incidents usually do not *by themselves* constitute sexual harassment, *see Faragher*, 524 U.S. at 788, 118 S.Ct. 2275, this does not mean that they do not form part of the overall totality of the circumstances that make a reasonable employee feel compelled to resign. Furthermore, Chavera alleges that the "give me some sugar" and the electrical cord incidents were not isolated events, but that they happened more than once. Thus, it is a question of fact whether these incidents were simply casual horseplay, or something more sinister. Therefore, again taking these incidents in the context of Chavera's claim as a whole, and assuming all factual inference in favor of the non-movant, the Court is not convinced that these incidents are so clearly irrelevant that it must exclude evidence of the incidents from consideration on a motion for summary judgment.

VISD also argues that the incident where Chavera alleges that Coleman rubbed his arm against her breast was an accident during work-related activity. Chavera alleges it was not accident, but that she perceived it as harassment. *See* Chavera Depo. at 105:16–19. Therefore, there is a factual dispute regarding this incident as well, and drawing all inferences in favor of the non-movant, the Court will not exclude evidence of this incident either.

#### (iii) Hearsay

■ VISD also tries to exclude the deposition testimony of Eleanor Gonzalez on the grounds that it is inadmissible hearsay. The Court notes that Gonzalez testifies

about her own actions and meetings about which she has personal knowledge. These portions of her deposition do not constitute hearsay. To the extent that Gonzalez does testify about what Chavera told her, much of the testimony is admissible to show Chavera's state of mind,[8] see Fed.R.Evid. 803(3), or to rebut VISD's implied and explicit assertions that Chavera never reported any of the prior harassment[9] and is now fabricating her previous complaints, see Fed.R.Evid. 801(d)(1)(B). Any testimony given by Gonzalez regarding what Chavera told her that does not fall into one of these two categories will not be considered by the Court. The Court notes that much of Gonzalez's testimony which may need to be excluded is duplicated by Chavera's own statements and deposition testimony. The Court will only rely on Chavera's own statements and other admissible testimony for these matters.

In summary, Chavera has provided evidence of many instances where she alleges she was harassed by Coleman in the form of affidavits, letters, and deposition testimony, as well as some evidence of being badgered and humiliated by the VISD administration when she complained about Coleman's harassment. The number and types of incidents of badgering and harassment Chavera alleges would be sufficient to support a jury's finding that a reasonable employee in her circumstances would feel compelled to resign.[10]

Thus, VISD's motion for summary judgment on lack of evidence must be denied. Whether the incidents actually happened as Chavera alleges, and whether a reasonable employee actually would have felt compelled to resign, are questions of fact that are better left for a jury.

## 2. Whether VISD Responded With Prompt, Remedial Action

■ VISD claims that it promptly responded to Chavera's complaint about the April 11, 2000 incident with appropriate remedial action, see Def.'s Mot. for Summ. J., ¶ 30, which is fatal to a plaintiff's constructive discharge claim, see Webb, 139 F.3d at 539–40. However, Chavera alleges that she was subjected to harassment on several occasions prior to April 11. She has provided evidence that, at least since September 1998, either she or Gonzalez or other female employees would periodically report Coleman's harassing behavior to her supervisors who did nothing until the April 11, 2000 assault. See Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., at 15–17 & Ex. A. Even after the alleged assault on April 11, 2000, Coleman was given administrative leave with pay for a short period of time, was allowed access to the Crain campus, and was even rehired in February 2001 after he had resigned in December 2000. Drawing all inferences from this evidence in her favor, Chavera has created a genuine issue of material

8. An employee's perception of harassment must be both objectively and *subjectively* reasonable, so Chavera's state of mind is relevant to that inquiry.

9. For example, Ron Leach states in his deposition that he never sought corroboration for any of Chavera's prior complaints of harassment when he investigated the April 11th incident because "I didn't have any indication of prior harassment." Deposition of Ron Leach, 48:9–10. Chavera alleges that she had complained to Leach, as well as other key

supervisors at VISD, about Coleman's harassment prior to April 11. While Gonzalez's non hearsay testimony regarding her own complaints do rebut assertions of recent fabrication by Chavera, some of her hearsay testimony does as well, and is admissible only through Federal Rule of Evidence 801(d)(1)(B).

10. To the extent it is relevant, a discussion of VISD's offer of a an alternative part-time position in August 2000 is discussed below in the analysis of Chavera's retaliation claim.

fact regarding whether VISD responded with prompt remedial action to her complaints of harassment.

Given the issues of fact surrounding whether a reasonable person in Chavera's circumstances would have felt compelled to resign, and whether VISD responded to her complaints of harassment with prompt remedial action, VISD has not shown as a matter of law that Chavera was not constructively discharged. Thus, it can not show as a matter of law that she did not suffer quid pro quo sexual harassment in violation of Title VII and its motion for summary judgment on Chavera's sexual harassment claim must be denied.

### (b) Hostile Work Environment Claim

Alternatively, the Court could still grant VISD's motion for summary judgment on any hostile work environment claim that Chavera may raise even though the motion for summary judgment must be denied as to a quid pro quo claim. A hostile work environment claim and a quid pro claim are different claims that have different requirements. In a quid pro quo analysis, "when a plaintiff proves a tangible employment action, a change in the terms or conditions of employment has been established." *Green,* 284 F.3d at 655 n. 5 (citing *Ellerth,* 524 U.S. at 753–54, 118 S.Ct. 2257). In contrast, when there has not been a tangible employment action, a plaintiff must bring a hostile work environment claim and establish a change in the terms or conditions of employment through other means. VISD argues that Chavera has failed to provide such evidence, and that the Court should therefore grant VISD's motion for summary judgment as to any hostile work environment raised by Chavera.

A plaintiff who asserts a hostile work environment claim under Title VII must establish that: (1) she belongs to a protected class, (2) she was subjected to un-welcome sexual harassment, (3) the harassment was based on sex, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Green,* 284 F.3d at 655 (citing *Mota v. Univ. of Tex. Houston Health Science Ctr.,* 261 F.3d 512, 523 (5th Cir. 2001)). To affect a term, condition, or privilege of employment, the alleged harassment must be severe or pervasive, and the sexually objectionable environment must also be both subjectively and objectively offensive. *Id.* Whether an environment is hostile or abusive enough to support a hostile work environment claim depends on a totality of circumstances. *Id.* at 655–656. When examining the totality of the circumstances, a court should focus on such factors as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. *Id.*

For the same reasons given in the quid pro quo analysis above, the Court declines to exclude evidence of the incidents VISD believes are time-barred, irrelevant, and/or inadmissible. Furthermore, the Court has already concluded that there is a factual dispute regarding whether Chavera was harassed to such an extent that a reasonable employee would feel compelled to resign, the standard for determining a constructive discharge claim. In this case, whether the harassment Chavera suffered is sufficient to uphold a constructive discharge claim is very similar to whether the harassment was severe and/or pervasive enough to constitute a hostile work environment. The primary difference is that a constructive discharge claim requires a greater degree of harassment than that required for hostile work environment

claims. *See Brown,* 237 F.3d at 566 (citing *Benningfield,* 157 F.3d at 378); *accord Epps v. NCNB Texas,* 7 F.3d 44, 46 (5th Cir.1993) (holding that in order to avoid a summary judgment on her constructive discharge claim, the plaintiff is required to show that the harassment was greater in severity or pervasiveness than the minimum required to prove a hostile work environment). Therefore, the burden on the plaintiff to show severe and/or pervasive harassment is greater for a constructive discharge claim than it is for a hostile work environment claim. Since the Court has already determined that Chavera has provided sufficient evidence to create a factual dispute regarding whether the harassment was so unbearable that a reasonable employee would have felt compelled to resign, then she has also met the lighter burden of providing sufficient evidence to create a factual dispute regarding whether the harassment was so severe and/or pervasive to constitute a change in the terms or conditions of her employment. Thus, the Court must deny summary judgment on this claim, unless VISD can establish that it has a defense and there are no fact issues regarding that defense.

VISD does assert that, regardless of whether Coleman's harassment was so severe or pervasive that it altered the terms or conditions of Chavera's employment, it should not be held liable because it took prompt, remedial action.[11] This is the same affirmative defense available to an employer facing a constructive discharge claim. For the same reasons listed above in the quid pro quo analysis, there is a factual dispute regarding whether VISD did respond with prompt, remedial action sufficient to absolve it of liability for a hostile work environment claim.

Therefore, with questions of fact remaining as to whether a term or condition of Chavera's employment was altered, and whether VISD responded with prompt, remedial action, summary judgment on any hostile work environment claim must be denied.

## 2. Retaliation Claim

■ In Title VII retaliation cases, the plaintiff must first make a prima facie showing that (1) she engaged in activity protected by Title VII, (2) she suffered an adverse employment action, and (3) a causal link existed between the protected activity and the adverse action. *Gee v. Principi,* 289 F.3d 342, 345 (5th Cir.2002). In its motion for summary judgment, VISD does not raise any arguments pertaining to the first and third elements. Rather, VISD's only basis for summary judgment on Chavera's retaliation claim is its assertion that she never suffered an adverse employment action.

Adverse employment actions include such ultimate employment decisions as hiring, discharging, promoting, compensating,

---

11. VISD alleges that this prompt, remedial action allows it to assert the affirmative defense set out in *Indest v. Freeman Decorating, Inc.,* 164 F.3d 258 (5th Cir.1999). However, VISD then clearly states in a later brief that it has NOT raised the *Burlington/Faragher* affirmative defense available to an employer who takes prompt remedial action. See Def.'s Resp. to Pl.'s Resp. to Def.'s Mot. for Summ. J., ¶ 4.

The Supreme Court's Burlington/*Faragher* affirmative defense, referred to as the *Ellerth/Faragher* defense above, is the affirmative defense applied by the Fifth Circuit in *Indest.* The Fifth Circuit merely applied the Burlington/*Faragher* affirmative defense to a different set of facts than existed in either *Burlington* or *Faragher.* It is still the same legal defense based on an employer's prompt, remedial action. Therefore, despite VISD's puzzling protestations that it either has no defense or has retracted its earlier asserted affirmative defense, the Court will treat VISD as having raised the affirmative defense, notwithstanding the label, until it receives clarification from VISD on its position.

or granting leave. *Green*, 284 F.3d at 657. Chavera claims that the actions of Coleman and VISD constituted a constructive discharge. Discharges sufficient to constitute an adverse employment action are not limited to actual discharges, but also encompass constructive discharges. *See, e.g., Walker v. Thompson*, 214 F.3d 615, 629 n. 20 (5th Cir.2000) ("Although the appellants raised the issue of constructive discharge in the district court, on appeal the appellants do not allege constructive discharge to satisfy the requirement of adverse employment action."); *Landgraf v. USI Film Prods.*, 968 F.2d 427, 431 (5th Cir.1992) ("The only possible adverse employment action that Landgraf suffered after she complained to Martin about the sexual harassment would be the alleged constructive discharge."); *Contreras v. Waffle House, Inc.*, 2002 WL 1477442, 2002 U.S. Dist. LEXIS 12376 *28 (N.D.Tex. July 9, 2002) (finding that plaintiff could not establish a retaliation claim because her failure to show that she was constructively discharged meant that she had also failed to demonstrate that she suffered an adverse employment action).

As discussed above, Chavera has established that there is a genuine issue of material fact regarding whether she was constructively discharged in April 2000. VISD points out that it offered Chavera an alternative, part time position at another school, Patti Welder Middle School, in August 2000. Chavera was advised by her medical providers to not return to work at that time and never responded to VISD's offer. There is no indication in the letter offering the position that VISD would do anything to ensure that Chavera would not be placed in contact with Coleman again if she worked at Patti Welder. To the contrary, an October 2001 email authored by

Victor Rendon indicates that Coleman's position required VISD to allow him access to the Crain campus, which implies that Coleman, as an air conditioning filter mechanic, would have access to all VISD campuses. This includes Patti Welder. There has been no evidence or argument submitted to the Court to contradict the inference that Coleman would have had access to Patti Welder. It is no answer to a an alleged constructive discharge situation based on sexual harassment to offer another position where the employee would still be in contact with the alleged harasser. Regardless, whether VISD decided in August 2000 to offer Chavera a new position is only relevant to the issue of damages, not the existence of an adverse employment action sufficient to support a retaliation claim.

Accordingly, VISD's motion for summary judgment on the retaliation claim is denied.

### C. Plaintiff's Request for Findings

At the end of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Plaintiff requests that the Court make several findings. As set forth above by the Court's rulings and discussion of the disputed facts,[12] the findings requested are either unnecessary or cannot be made.

### CONCLUSION

For the reasons listed above, VISD's motion for summary judgment is DENIED.

It is so ORDERED.

---

12. VISD has not disputed Chavera's assertion that Coleman was her supervisor. Therefore, the Court did assume for the purposes of this summary judgment motion that he was her supervisor from January 1998 until April 11, 2000.